An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-882

Filed 5 August 2026

Mecklenburg County, No. 23CR350079-590

STATE OF NORTH CAROLINA

       v.

QUENCY JALEEL COX

Appeal by defendant from judgment entered 18 December 2024 by Judge Clifton H. Smith in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 March 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Farrah R. Raja, for the State-appellee.*
>
> *Stephen D. Fuller for defendant-appellant.*

FREEMAN, Judge.

Defendant appeals from the trial court's judgment entered upon his guilty plea to possession of a firearm by a felon following the trial court's denial of his motion to suppress. On appeal, defendant argues the trial court erred by denying his motion to suppress evidence found during a law enforcement officer's *Terry* stop. Defendant also argues his conviction for possession of a firearm by a felon violates his rights

under the Constitution of the United States and the North Carolina Constitution. After careful review, we conclude defendant failed to demonstrate reversible error in the judgment entered upon his guilty plea and affirm.

## I.     Factual and Procedural Background

On 3 July 2023, at 11:06 p.m., an anonymous tipster (the Caller) called the Charlotte-Mecklenburg Police Department claiming that an individual (the Suspect) pointed a firearm at a child at Romare Bearden Park in Charlotte, North Carolina. The Caller stated the Suspect was one of three black male teenagers. The dispatcher later clarified only two subjects were involved. One was wearing a black t-shirt and a gray backpack, and the other was wearing a tank top with a drawstring bag. A Charlotte-Mecklenburg Police Officer (the Responding Officer) received a computer-aided dispatch printout based on the dispatcher's notes from the 911 call that included the teenagers' descriptions and the following: "2X SUBJS HAVE FIREARMS"; "SUBJ STILL IN PARK. WALKED BEHIND THE BIG ROCKS"; and "SUBJ W/ GRY BACKPACK HAD A GUN."

When the Responding Officer arrived at the park, a six-year-old child told him there was a man with a gun. The child brought the Responding Officer to his mother, who the Responding Officer presumed was the caller. When he asked where the subjects were located, she pointed towards an area with large rocks over a waterfall and said, "There's three of 'em." When approaching, the Responding Officer noticed two men behind the large rocks in a grassy area—the first men matching the

description of the teenagers. Defendant was one of these two men, wearing grey clothing and a dark-colored backpack. The Responding Officer told them to show him their hands as he drew his firearm. Other officers arrived at the scene and searched defendant. The officers discovered a firearm located in the waistband of defendant's pants. Defendant was subsequently arrested for carrying a concealed gun and resisting a public officer. It was later discovered that defendant had been previously convicted of a felony.

On 17 July 2023, a grand jury indicted defendant for possession of a firearm by a felon and carrying a concealed weapon. Defendant was also indicted for resisting a public officer, which was dismissed in the plea agreement. On 12 July 2024, defendant moved to suppress evidence of the firearm obtained from the search, asserting the *Terry* stop was unreasonable. On 18 December 2024, the trial court heard and denied defendant's motion to suppress evidence of the recovered firearm. Defendant pleaded guilty to possession of a firearm by a felon pursuant to a plea agreement with the State in which the other charges were dismissed.

Defendant filed a notice of appeal on 19 December 2024 and filed a petition for writ of *certiorari* on 22 October 2025.

## II.    Jurisdiction

"An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C.G.S. § 15A-979(b) (2025). A defendant who intends to appeal from the

denial of a motion to suppress "must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute." *State v. Reynolds*, 298 N.C. 380, 397 (1979). Because defendant informed the trial court and the State of his intent to appeal the denial of his motion to suppress before plea negotiations were finalized and judgment was entered, we have jurisdiction to consider the appeal and dismiss the petition for writ of *certiorari* as moot.

## III.    Standard of Review

"We review a trial court's order on a motion to suppress to determine 'whether the trial court's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the trial court's ultimate conclusions of law.'" *State v. Julius*, 385 N.C. 331, 336 (2023) (quoting *State v. Parisi*, 372 N.C. 639, 649 (2019)). When the trial court's findings of fact are not challenged on appeal, they are considered to be supported by competent evidence and are binding. *State v. Baker*, 312 N.C. 34, 37 (1984). "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168 (2011) (citing *State v. McCollum*, 334 N.C. 208, 237 (1993)). Under de novo review, we consider the matter anew and freely substitute our own judgment for that of the lower tribunal. *State v. Hill*, 291 N.C. App. 633, 636–37 (2023).

## IV.    Discussion

Defendant raises two arguments on appeal. First, defendant contends that the

trial court erred in denying his motion to suppress evidence obtained through the officers' *Terry* stop because officers did not have reasonable suspicion. Second, defendant contends his conviction was unconstitutional because North Carolina's statute criminalizing possession of a firearm by a felon, N.C.G.S. § 14-415.1, violates the Constitutions of the United States and of North Carolina. We address each argument in turn.

## A. Motion to Suppress

Defendant argues the trial court erred in denying his motion to suppress evidence obtained through the officers' *Terry* stop because the officer did not have reasonable suspicion. Defendant contends the difference between the description given to the officers and the defendant's characteristics rendered the *Terry* stop unreasonable.

Section 15A-974 of the North Carolina General Statutes require suppression of evidence if: "(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or (2) It is obtained as a result of a substantial violation of the provisions of [Chapter 15A]." N.C.G.S. § 15A-974(a); *State v. Rogers*, 388 N.C. 453, 464–65 (2025).

"Both the federal and North Carolina constitutions protect an individual's right to be free from unreasonable government searches and seizures absent probable cause." *State v. Johnson*, 269 N.C. App. 76, 82 (2019), *aff'd*, 378 N.C. 236 (2021); U.S. Const. amend. IV; N.C. Const. art. I, § 20. "State officials' actions must comport with

the Fourth Amendment, as its requirements are 'enforceable against the states through the Due Process Clause' of the Fourteenth Amendment." *State v. Johnson*, 246 N.C. App. 677, 685 (2016) (citing *Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949)). "Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause." *State v. Allman*, 369 N.C. 292, 293 (2016) (citing *State v. Arrington*, 311 N.C. 633, 643 (1984)).

In *Terry v. Ohio*, the Supreme Court of the United States held reasonable suspicion is required for brief investigatory stops to comply with the Fourth Amendment. 392 U.S. 1, 27 (1968). "Under *Terry*, a stop-and-frisk of an individual passes constitutional muster if: (1) the stop, at its initiation, was premised on a reasonable suspicion that crime may have been afoot; and (2) the officer possessed a reasonable suspicion that the individual involved was armed and dangerous." *State v. Malachi*, 264 N.C. App. 233, 236 (2019); *Terry*, 392 U.S. at 27.

Reasonable suspicion is less demanding than probable cause, but entails "some minimal level of objective justification," *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984), that is more than a mere "inchoate and unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27. The stop must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

Whether an officer has sufficient reasonable suspicion is analyzed under the

totality of the circumstances. *States v. Cortez*, 449 U.S. 411, 417 (1981). When assessing the whole picture, trained officers may "draw[ ] inferences and make[ ] deductions . . . that might well elude an untrained person." *Id.* at 418. Whether information from an anonymous informant can form the basis for reasonable suspicion depends on "both the content of information . . . and its degree of reliability." *Ala. v. White*, 496 U.S. 325, 330 (1990). "[T]here are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Fla. v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *White*, 496 U.S. at 327).

For example, in *Navarette v. California*, the Supreme Court of the United States held that an informant's tip indicated reliability because she made a "contemporaneous report" that she was run off the road by a specific truck, and officers were able to locate that truck about 18 minutes after the 911 call. 572 U.S. 393, 399 (2014). There, the informants' identity was disputed, but the Court reasoned that, presuming the informant was anonymous, the officer did not act unreasonably because the "reliable tip alleging dangerous behaviors . . . generally would justify a traffic stop on suspicion of drunk driving." *Id.* at 402.

In *United States v. Bryant*, an anonymous informant told police the defendant was at a restaurant and "had a gun inside a brown satchel." 654 Fed. App'x 622, 623 (4th Cir. 2016). The informant also provided the defendant's "name, birthday, age, and status as a felon." *Id.* at 626. The United States Court of Appeals for the Fourth

Circuit held there was no reasonable suspicion to conduct a *Terry* stop, reasoning that such details "merely 'identify a determinate person' rather than demonstrate the reliability of the tipster's 'assertion of illegality.' " *Id*. (quoting *J.L.*, 529 U.S. at 272).

Here, the officers had reasonable suspicion to conduct a *Terry* stop. The Caller asserted a group of three teenage black males were present in the park when one had pointed a gun at a child. The Caller stated that the Suspect had a gray backpack and a gun and walked with another suspect "behind the big rocks." The Caller's tip was corroborated upon the Responding Officer's arrival when: (1) a child told the Responding Officer that there was a man in the park with a gun; and (2) that child's mother told the Responding Officer the suspects went in the direction of the waterfall and the big rocks. Unlike *Bryant*, the Caller's tip included information related to illegal activity—the Suspect's location, description, and possession of a gun—that multiple people corroborated at the scene.

In addition to the Caller's tip and multiple corroborations, it was around 11:00 p.m. at night and dark, so defendant's gray clothing could have reasonably been mistaken for black. Similarly, the difference between the Caller's estimated age and defendant's actual age does not render the stop unreasonable, because the circumstance makes it more difficult to discern the Suspect's specific age. *See Milla v. Brown,* 109 F. 4th 222, 229 (4th Cir. 2024) (recognizing that "factors like the lateness of the hour can support a finding of suspicion in the totality-of-the-circumstances analysis"). Defendants' presence in the area by the rocks, which both

the Caller and child's mother identified, further aided the *Terry* stop's reasonableness because Defendant was the first person that the Responding Officer encountered by the rocks who matched the description of the subject. *See State v. Rinck*, 303 N.C. 551, 560–61 (1981) (holding that defendant's presence near the scene of a burglary at an unusual hour was a factor which favored an officer's reasonable suspicion to make a *Terry* stop).

The officers had reasonable suspicion defendant was armed and dangerous because the Suspect's conduct, described by the Caller and corroborated by others, involved a firearm which he allegedly pointed at a child. Because the officer's had reasonable suspicion that defendant was the Suspect, they would expect him to be "armed and dangerous." *Terry*, 392 U.S. at 27. Therefore, under the totality of the circumstances, the "minimal level of objective justification" to conduct a *Terry* stop was satisfied. *I.N.S.*, 466 U.S. at 217. Accordingly, the trial court did not err by denying the defendant's motion to suppress.

## B. Constitutional Challenge to Felon-in-Possession Laws

Defendant next asserts that the statute criminalizing possession of a firearm by a felon, N.C.G.S. § 14-415.1, is unconstitutional under the Constitutions of both the United States and of North Carolina. Because defendant did not raise this argument at trial, he asks this Court to invoke Rule 2 of the Rules of Appellate Procedure and waive Rule 10's preservation requirements.

Rule 2 provides that this court may "suspend or vary the requirements or

provisions of any of these rules" to "prevent manifest injustice to a party." N.C. R. App. P. 2. Because this Court has recently rejected arguments regarding this statute's constitutionality, *see, e.g.*, *State v. Nanes*, 297 N.C. App. 863 (2025), invoking jurisdiction under Rule 2 and suspending Rule 10 is not necessary to prevent a manifest injustice. Accordingly, we decline to invoke Rule 2 and dismiss defendant's unpreserved argument. N.C. R. App. P. 2, 10.

## V.     Conclusion

For the foregoing reasons, we conclude that the trial court did not err by denying defendant's motion to suppress because the officers had reasonable suspicion to conduct the *Terry* stop. We decline to invoke Rule 2 to review defendant's unpreserved constitutional challenge. Thus, defendant has failed to demonstrate prejudicial error in the trial court's judgment and we affirm.

AFFIRMED.

Judges TYSON and COLLINS concur.

Report per Rule 30(e).